## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARITY SOFTWARE, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **2:04-cv-1441** |
| ALLIANZ LIFE INSURANCE COMPANY | ) | |
| OF NORTH AMERICA, | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER OF COURT

Before the Court for consideration and disposition is the MOTION FOR SUMMARY

JUDGMENT, with brief in support (*Document Nos. 63 & 65*) filed by defendant Allianz Life

Insurance Company of North America ("Defendant"), the MEMORANDUM OF PLAINTIFF IN

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT (*Document No. 74*), and the

REPLY BRIEF OF ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA ON

MOTION FOR SUMMARY JUDGMENT (*Document No. 78*).  The issues have been fully

briefed, and the matter is ripe for disposition.  For the reasons which follow, the Motion for

Summary Judgment will be granted in part and denied in part.

### Background

Plaintiff Clarity Software, LLC ("Plaintiff") is a Pennsylvania corporation that was

created in 2003.  Def's Stmt. of Facts at ¶ 2.  Vincent Heck ("Heck") is Plaintiff's General

Manager.  *Id*.  Plaintiff is in the business of licensing PenD'Calc software to financial planners,

banks and other businesses.  *Id*.  The software at issue in this case is described on Plaintiff's

website as "a scalable integrated retirement distribution and estate planning software system."

*Id*. at ¶ 3.  The copyright application for the software reflects that Plaintiff is the copyright

claimant and Heck is the author of the software, which is titled as "Multi-Generation IRA

Analysis."  Def's exh. X.  The software is referenced in the Complaint as "Retirement and Estate

Planning" or "R & EP" software.  *See* Complaint at ¶ 12.

In October of 2002, Lisa Resnick ("Resnick") was Defendant's Senior Vice President of Marketing. Def's Stmt. of Facts at ¶ 10. Discussions between Resnick and Heck led to Defendant's purchase of a license to use Plaintiff's software. *See id.* at ¶¶ 10-13. On December 16, 2002, Heck sent Resnick a PenD'Calc Corporation invoice for "qualified stretch annuity IRA software unlimited distribution license as per agreement with Lisa Resnick through 12/31/2003." *Id.* at ¶ 14. It was agreed that the scope of distribution was not to exceed 5,000 agents. Pltf's Stmt. of Facts at ¶ 14. Additionally, Defendant had Plaintiff "customize" the software to reflect the Allianz logo, color scheme and some relevant text. *See* Pltf's Stmt. of Facts at ¶¶ 16-18.

Final delivery of the software was made in either December of 2003 or January of 2004. Def's Stmt. of Facts at ¶ 19; Pltf's Stmt. of Facts at ¶ 19. In January of 2004, after the original license had expired, Defendant, through Resnick, renewed the license. Heck affidavit at ¶ 24. The license was extended until June 30, 2004, and it was extended again until September 1, 2004. Def's Stmt. of Facts at ¶ 23.

Starting in April of 2004, Barb Quello ("Quello"), one of Defendant's employees, worked with Coss, a software company, to develop "new" Stretch IRA software for Defendant. *Id.* at ¶ 24. On April 16, 2004, Quello sent an e-mail to Coss which said that Defendant "would like to add some additional detail to the output [of the already-existing Coss demo software], similar to the last 5 pages of the attached .pdf file." Def. exh. p. The attached file was the entire output of Plaintiff's Retirement and Estate Planning Software. Pltf's Stmt. of Facts at ¶ 24. In response, another Coss employee sent an e-mail thanking Quello for the copy of Plaintiff's output. Def. exh. Q. The e-mail also stated:

> Because we don't want to violate any copyright infringement rules, please send us your suggested/ required output for the Stretch IRA concept. Would be best to use a word processing program but feel free to sketch it out on a piece of paper.

*Id.* There is no evidence that Defendant ever sent Coss anything other than a copy of the output of Plaintiff's software. *See* Pltf's Stmt. of Facts at ¶ 25.

Coss finished the development of its software in late August 2004, and Defendant made

the same available to its agents starting September 1, 2004.  Def's Stmt. of Facts at ¶ 27.  On September 10, 2004, Heck asked Resnick for a copy of the output of the software developed by Coss, and Resnick sent him a copy the next day.  *Id.*

A comparison of the outputs of Plaintiff's and Coss' software reveals that the fourth page of Plaintiff's output and the second page of Coss' output are very similar; in all other respects there are few or no significant similarities between the two outputs.  *Compare* Def's exhs. V & W; Complaint, exhs D & E (same documents reproduced in color).  The relevant pages of the software of both Coss and Plaintiff reflect the same basic format and layout, color scheme, text boxes and text.

On September 13, 2004, Heck noted the similarities in an e-mail to Resnick.  Def's exh. T.  Defendant discontinued its use of the Coss software on September 22, 2004, and Defendant's evidence indicates that only five of its agents accessed the software developed by Coss.  Def's exh. Y & X.  Plaintiff purports to dispute these facts, but has identified no evidence to the contrary in its summary judgment filings.  *See* Pltf's Stmt. of Facts at ¶ 31.

On September 20, 2004, Plaintiff filed this lawsuit.  In its Complaint, Plaintiff has brought claims for breach of contract (Count I), violation of the Lanham Act (Count II), misappropriation of  trade secrets (Count III), copyright infringement (Count IV), fraud (Count V), conversion (Count VI), restitution to prevent unjust enrichment (Count VII), and claims for intentional interference with existing and prospective contractual relations (Counts VIII and IX).  The gravamen of Plaintiff's claims is that Defendant "unlawfully developed an unauthorized version of derivative software from the copyrighted Clarity software" and used said software to market its financial products through its insurance agents.  Complaint at 2.  Defendant contends that summary judgment should be granted on all claims.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

[Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

4

<u>Discussion</u>

A.   <u>Breach of Contract (Count I)</u>

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quotations and citation omitted).   According to the Complaint, the contract allegedly breached by Defendant is the License Agreement for the software.   Complaint at ¶¶ 46-49.   The License Agreement provides, in relevant part, as follows:

> You shall not:
>
> ***
> Use the Program, or permit use of this program, in a network, multi-user arrangement, or remote access arrangement, including any online use, except as otherwise explicitly provided by this Program and license agreement.
>
> Reverse engineer, revise source code, modify, decompile, disassemble, or create derivative works of this Program, in whole or in part.

Complaint, exh A.

PenD'Calc initially licensed its software to Defendant in or around November 2002, and the License Agreement was renewed by Clarity, the successor-in-interest to PenD'Calc, in or around January 2004, and again in June 2004.   Complaint at ¶ 30; Def's Stmt. of Facts at ¶¶ 10-11; Heck affidavit at ¶ 23.   Heck states in his affidavit that "the software delivery that is the subject of this action and the agreement that was breached were delivered in January 2004." Heck affidavit at ¶ 23.

Defendant contends that summary judgment should be granted because "Plaintiff cannot even produce the contract it alleges was breached."   Defendant's brief at 17.   Defendant explains its argument as follows:

> In its Complaint, Plaintiff alleged that "a true and correct copy of the License Agreement is attached hereto as Exhibit 'A.'" Complaint at ¶ 14.   In discovery, however, Plaintiff admitted that allegation was false - - the contract attached to the Complaint was in fact <u>not</u> a true and correct copy of the alleged agreement between Allianz Life and Plaintiff.   This was apparent because the contract, allegedly executed in November 2002, references Clarity Software, which

5

> Plaintiff admits did not even exist in 2002.  Plaintiff then alleged there was a
> different license agreement between PenD'Calc and Allianz, ... and claimed it had
> a copy it would produce.  Since this issue came up in deposition in late May 2005,
> Plaintiff has not produced the alleged contract.

Defendant's brief at 17-18.

Heck's affidavit reflects that "Exhibit A" to the Complaint is the License Agreement between Plaintiff and Defendant, *i.e.* the License Agreement of January 2004 at issue in this action.  Heck affidavit at ¶¶ 23, 34.[1]  Plaintiff has also produced a copy of the November 2002 agreement between PenD'Calc and Defendant.  Pltf's Stmt. of Facts, exh. G.  The terms of the January 2004 License Agreement are identical to the November 2002 agreement.  Heck affidavit at ¶ 34 ("The only difference between the two contracts is the identification of the parties.").  Therefore, in light of the License Agreement at issue having been filed with the Complaint, the Court rejects Defendant's argument about Plaintiff's alleged failure to produce the contract.

Defendant also contends that there is "no evidence that the document [Plaintiff] alleges was a contract was ever presented to Allianz Life or assented to by Allianz Life."  Defendant's reply at 4.  However, Heck testified at his deposition that the license agreement for the software was "part of the install process," *i.e.*, "[y]ou would double click on the software and before the software would begin the actual installation, you would have to consent or acknowledge and accept license agreements."  Heck deposition at 128.  Presumably Defendant followed this process again when it "obtained another license in or about January 2004," Answer at ¶ 17, which suffices to create a genuine issue of material fact regarding whether Defendant assented to the terms of the License Agreement.

Finally, Defendant contends that summary judgment should be granted because it "did not provide software to Coss - it provided only a copy of the output," and "thus did not enable Coss to use Plaintiff's program."  Defendant's reply at 5.  However, the Court finds, based on the facts recited above, that there is a genuine issue of material fact as to whether Defendant worked

---

[1].  Defendant admits that it "obtained another license in or about January 2004," and that "it again obtained a license in June 2004."  Answer at ¶ 17.

with or requested that Coss "create derivative works of [the] Program," in violation of the License Agreement.  Therefore, the Court will not grant summary judgment to Defendant on Plaintiff's breach of contract claim.


B.     Unfair Competition and False Designation of Origin - Lanham Act (Count II)

     The Complaint alleges that:

     Allianz has violated Section 43(a) of the Lanham Act, in that Allianz has used and continues to use in commerce, in connection with the sale of its goods or services, a word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to cause confusion, or to cause mistake or deceive as to the affiliation, connection, or association of Allianz' goods or services with Clarity, or as to the origin or affiliation of Allianz' goods or services by Clarity.

Complaint at ¶ 53.

     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

          (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

          (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

          (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

          shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

     Section 43(a) covers a broad range of claims, including, for example, false advertising, passing off, unprivileged imitation, and false designations.  *AT & T Co. v. Winback and Conserve Program Inc*., 42 F.3d 1421, 1428  n. 9 (3d Cir. 1994), *cert denied*, 514 U.S. 1103 (1995).  The Court of Appeals for the Third Circuit has observed that the Lanham Act proscribes not only

trademark infringement in its narrow sense, but more generally creates a federal cause of action for unfair competition. *See id.* at 1428; *see also Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 872 (3d Cir. 1992) (noting that the Lanham Act applies only to claims of false representations in advertising).[2]

In order to succeed on a claim for false designation of origin, a plaintiff must prove by a preponderance of the evidence that: (1) defendant used a false designation of origin, as defined in the Act; (2) that such use of a false designation occurs in interstate commerce in connection with goods and services; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of goods or services by another person; and (4) that a plaintiff has been or is likely to be damaged. *Winback*, 42 F.3d at 1428.

Under Section 43(a) of the Lanham Act, unfair competition occurs when, *inter alia*, a defendant uses a false designation of origin in connection with goods or services in interstate commerce that is likely to cause confusion in the marketplace and likely to cause the plaintiff injury. *See* 15 U.S.C. § 1125(a)(1). The Third Circuit has interpreted the Lanham Act to require a plaintiff to show that: 1) the defendant has made false or misleading statements as to his or her or another's product or services; 2) there is actual deception, or at least a tendency to deceive a substantial portion of the intended audience; 3) the deception is material in that it is likely to influence purchasing decisions; 4) the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales and loss of good will. *U.S. Healthcare Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922-23 (3d Cir.), *cert. denied*, 498 U.S. 816 (1990).

Defendant contends that Plaintiff's Lanham Act claims must fail because 1) a copyright

---

[2]. The Lanham Act prohibits false or misleading statements of fact "in commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Although "advertising" and "promotion" are not defined in the Lanham Act itself, courts have found "no indication that Congress, through its use of the language 'commercial advertising or promotion,' intended to extend Lanham Act coverage to every isolated alleged misrepresentation made to a potential customer by a business competitor." *Garland Co. v. Ecology Roof Sys. Corp.*, 895 F. Supp. 274 (D. Kan. 1995).

claim cannot be "recast" as a Lanham Act claim under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), which Plaintiff has attempted to do, 2) Plaintiff has no valid and protectable trademark, 3) Plaintiff has not even identified its claimed mark, and 4) Plaintiff has no evidence of consumer confusion or damages.  Def's Br. at 11-12.  The Court finds that the lack of evidence of consumer confusion and/or actual or potential deception, as well as Plaintiff's failure to identify its trademark, warrant the entry of summary judgment on these claims. Plaintiff's brief in opposition says nothing about the viability of its Lanham Act Claims, and it appears that Plaintiff has abandoned the same.  Therefore, the Court finds that summary judgment should be granted due to Plaintiff's failure to demonstrate a genuine issue of material fact.  *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported ..., an adverse party ... must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.").


C.     Misappropriation of Trade Secrets (Count III)

          The Complaint alleges that Plaintiff's software contains confidential, proprietary information, and that Defendant has "misused, disclosed, converted and otherwise misappropriated Clarity's confidential and proprietary information ..."  Complaint at ¶ 61. Defendant contends that this claim fails because the only trade secret alleged by Plaintiff is its source code, and Defendant never had access to the source code.  Def's Br. at 14.  The Court finds that Defendant has met its burden of demonstrating that summary judgment should be granted on that basis.  Other than the generic contention that its common law claims are not preempted by the Copyright Act, Plaintiff's brief in opposition says nothing about the merits of this claim, and it appears that Plaintiff has abandoned the same.  Therefore, the Court finds that summary judgment should be granted due to Plaintiff's failure to demonstrate a genuine issue of material fact.  *See* Fed.R.Civ.P. 56(e).

9

D.    Copyright Infringement (Count IV)

In order to establish a claim of copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991) (*citing Harper & Row Publishers v. Nation Enters.,* 471 U.S. 539, 548 (1985)).  Defendant contends that for various reasons, Plaintiff can demonstrate neither of these elements.  The Court will address the issues raised *seriatim.*

a.    Whether Plaintiff's Copyright Covers the Software's Output

Defendant contends that Plaintiff's copyright infringement claim must fail because Plaintiff's copyright registration only covers the software's source code, and not the software's output, and there is no allegation that Defendant copied or even had access to the source code.  Def's Br. at 6.[3]  Plaintiff's copyright application does not assert a specific claim in the screen displays/output, and does not contain identifying materials for the screen displays/ output.  Instead, the application contains only a copy of the first and last ten (10) pages of the source code.  *See* Def's exh. X.  Nowhere on the form is there any indication that Plaintiff expressly sought to register a copyright in any pictorial or graphic element of the Multi-Generation IRA Analysis.  *See id.*

"Title 17 U.S.C. § 102(a)(1) extends copyright protection to 'literary works,' and computer programs are classified as literary works for the purposes of copyright." *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.,* 797 F.2d 1222, 1234 (3d Cir. 1986).  However, "screen outputs are considered audio-visual works under the copyright code, ... and are thus covered by a different copyright than are programs." *Id.* at 1244.

Courts have reached varying conclusions regarding whether an application for a copyright

---

[3]. "Once the plaintiff produces a certificate of copyright, the burden shifts to the defendant to demonstrate why the claim of copyright is invalid." *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1541 (11th Cir. 1996).

in source code also creates copyright protection for screen displays.  Defendant's position is

supported by *Digital Communications Associates, Inc. v. Softklone Distributing Corp.*, 659

F.Supp. 449 (N.D. Ga. 1987), which holds that "copyright protection of a computer program does

not extend to screen displays generated by the program."  *Softklone*, 659 F.Supp. at 455.  The

*Softklone* court relied upon "those cases finding the audiovisual screen displays of a video game

to be separately copyrightable," and also reasoned that "screen displays generated by computer

programs are not direct 'copies' or 'reproductions' of the literary or substantive content of the

computer programs."  *Id*.  Language from the *Whelan* court's decision, cited above, is also

indirectly supportive of Defendant's position.  Plaintiff, on the other hand, contends that its

registration is sufficient to establish copyright protection in the screen outputs.

Cases decided subsequent to *Softklone*, as well as the U.S. Copyright Office, have

reached a different conclusion from that reached by the *Softklone* court.  For example, Plaintiff's

position is supported by *Manufacturers Technologies, Inc. v. Cams, Inc.*, 706 F.Supp. 984 (D.

Conn. 1989), which "treat[ed] the single registration of the computer program as accomplishing

two interrelated yet distinct registrations; one of the program itself and one of the screen displays

or user interface of that program, to the extent that each contains copyrightable subject matter."

*Cams*, 706 F.Supp. at 993.  "This approach creates the legal fiction of two separate registrations,"

while also "recogniz[ing] that a computer program and its screen displays are, for copyright

purposes, fundamentally distinct."  *Id*.

Plaintiff's position is also consistent with a Circular published by the U.S. Copyright

Office which states, in pertinent part, as follows:

> Copyright protection for computer screen displays, including videogames, has
> been an issue in the courts for some time. Courts have differed in their opinions
> regarding whether screen displays may be registered separately.
>
> The Copyright Office has consistently believed that a single registration is
> sufficient to protect the copyright in a computer program and related screen
> displays, including videogames, without a separate registration for the screen
> displays or a specific reference to them on the application for the computer
> program. An application may give a general description in the "nature of
> authorship" space, such as "entire work" or "computer program."  This description

will cover any copyrightable authorship contained in the computer program and screen displays, regardless of whether identifying material for the screen is deposited.

A specific claim in the screen displays may be asserted on the application. In such a case, identifying materials for the screens must be deposited.

Copyright Registration for Computer Programs, U.S. Copyright Office Circular 61 (December 2004) (emphasis added).  The Circular goes on to state that:

Because the computer program is a literary work, literary authorship will predominate in most works, including many in which there are screen graphics. Therefore, registration will usually be appropriate on Form TX.  If pictorial or graphic authorship predominates, registration may be made on Form PA as an audiovisual work.

*Id.*[4]

Finally, as the *Cams* court recognized, there is a Copyright Office decision which "state[s] that a single copyright registration of a computer program extends copyright protection not only to the literal elements of the program-its source and object codes - but also to the screen displays it generates to the extent that they contain original creative authorship." *Cams*, 706 F.Supp. at 991 (*citing* 36 Pat. Trademark & Copyright J. (BNA) 155 (1988)).  In light of the foregoing authorities which support Plaintiff's position, the Court finds that the lack of an explicit reference to the screen displays of Plaintiff's software on its copyright registration paperwork does not render its copyright claim invalid.

b.      Whether Plaintiff Actually Owns the Copyright

The basic principles which govern the ownership of a copyright are as follows:  A "[c]opyright in a work protected [by the Copyright Act] vests initially in the author or authors of the work."  17 U.S.C. § 201(a).  However, "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of [the Copyright Act], and, unless the parties have expressly agreed otherwise in a written instrument

---

[4]. Plaintiff used Form TX, rather than Form PA, to apply for its copyright. *See* Def's exh. X.

12

signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b).

Additionally, all transfers of copyright ownership must be in writing. 17 U.S.C. § 1704;

*MacLean Associates, Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778 (3d Cir.

1991).

Defendant contends that summary judgment is appropriate because Plaintiff does not own

a valid copyright in the software. Def's Br. at 4. Specifically, Defendant contends that

Microbase, a now-defunct corporation solely owned by Heck, owned the copyright at issue

because Heck created the software as an employee of Microbase (pursuant to the "work made for

hire" provision), that there was an ineffective, oral transfer of the copyright at issue from

Microbase to PenD'Calc in 1993, that due to the ineffective oral transfer Microbase still owned

the copyright upon its dissolution in 1996, and that because PenD'Calc did not own the copyright

in August of 2003 when the same was purportedly transferred to Plaintiff, Plaintiff's copyright

claim must fail. Def's Br. at 4-5. Defendant also points out that "Vincent Heck executed a

document in August 2003, alleging that at that time he *personally* owned the copyright in the

software," and that Heck's assertion of personal ownership of the software was reaffirmed by

Heck during his deposition. *Id*. at 5.

Heck's Affidavit states that "[t]here was a document reflecting the assignment of the

[earlier Microbase-era] DOS software from Microbase to PenD'Calc," but that he could not

locate that document. Heck Affidavit at ¶ 8. In any event, Hecks Affidavit states that "[t]he first

line of code of the software for the present product was not written until 1997," and that "[t]he

DOS-based software was discontinued in 1996, and has no relevance to Clarity's present claims

..." *Id*. at ¶ 3.[5] Heck's Affidavit also states that he "was the sole developer of the most current

---

[5]. These assertions regarding the software are somewhat inconsistent with Plaintiff's
answers to Defendant's Interrogatory #12, which indicates that the copyright for the software at
issue in this lawsuit was first owned by Microbase, transferred to PenD'Calc prior to the
dissolution of Microbase in 1996, and then transferred from PenD'Calc *and Heck* in August
2003. However, as stated in the text, Heck's Affidavit states that he "was the sole developer of
the most current Windows-based software product and ... at all times retained full ownership and

Windows-based software product and ... at all times retained full ownership and exercised complete control of this Windows-based software through corporations solely owned by me, prior to the 2003 assignment of software rights to Eric Wallace [the majority owner of Clarity Software]." Heck Affidavit at ¶ 5.

The Court finds that the facts set forth in Heck's Affidavit are sufficient to create a genuine issue of material fact as to whether PenD'Calc and/or Heck was the owner of the subject copyright and could validly transfer the same to Plaintiff.[6] The Affidavit reflects that the software at issue was owned by Heck when it was transferred to Plaintiff in 2003. If true, it would appear that Plaintiff is the owner of the software and copyright at issue in this case.

      c.    <u>Whether the Output of Coss' Software is Substantially Similar</u>

Defendant contends that page 2 of Coss' software is not substantially similar to page 4 of Plaintiff's software. The law governing the issue of substantial similarity is summarized by the Third Circuit as follows:

> Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, ... including the rights to distribute and reproduce copyrighted material. It may be demonstrated by showing that the defendant had access to the copyrighted work and that the original and allegedly infringing works share substantial similarities.
> "Substantial similarity," in turn, is further broken down into two considerations: (1) whether the defendant copied from the plaintiff's work and (2) whether the copying, if proven, went so far as to constitute an improper appropriation. First, the fact-finder must decide whether there is sufficient similarity between the two

---

exercised complete control of this Windows-based software through corporations solely owned by me, prior to the 2003 assignment of software rights to Eric Wallace." Heck Affidavit at ¶ 5. Suffice to say that these inconsistencies have confounded the issue of who owns the subject copyright. The Court also observes that there is evidence that PenD'Calc was *not* solely owned by Heck, and that he and George K. Greene were equal shareholders. Document No. 72, exh. C (memorialization of agreement between Heck and Greene to incorporate PenD'Calc).

[6]. The parties have not briefed the issue, but it appears that in order for Heck to retain ownership of software developed while he was employed by PenD'Calc, there must be some evidence that the copyright did not accrue to PenD'Calc pursuant to the "work done for hire" doctrine. 17 U.S.C. § 201(b).

works in question to conclude that the alleged infringer used the copyrighted work in making his own.  A showing of substantial similarity in this sense, coupled with evidence that the infringing author had access to the original work, permits a fact-finder to infer that the infringing work is not itself original, but rather is based on the original.  At this stage of the inquiry, expert testimony is permissible to help reveal the similarities that a lay person might not ordinarily perceive.  Direct evidence of copying or an admission by the infringing author would satisfy this test as well.

Not all copying, however, is copyright infringement.  Even if actual copying is proven, the fact-finder must decide without the aid of expert testimony, but with the perspective of the 'lay observer,' whether the copying was 'illicit,' or 'an unlawful appropriation' of the copyrighted work."  The focus in this second step is whether the substantial similarities relate to protectible material.  Phrased in an alternative fashion, it must be shown that copying went so far as to constitute improper appropriation, the test being the response of the ordinary lay person.  Part of this inquiry involves distinguishing between the author's expression and the idea or theme that he or she seeks to convey or explore.

*Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207-08 (3d Cir. 2005) (citations and some quotation marks omitted).

At first glance the two pages appear to be not only substantially similar, but nearly identical.  Both pages have the same basic layout/arrangement of text boxes and headings.  Additionally, Coss' page uses the same language and color scheme used by Plaintiff.  Based upon these obvious similarities, a finder of fact could easily find the first element of substantial similarity, *i.e.*, whether the defendant copied from the plaintiff's work.

Whether the two pages are substantially similar appears to turn on the second element, i.e., "whether the copying, if proven, went so far as to constitute an improper appropriation."  *Kay Berry*, 421 F.3d at 208.  Defendant appears to invoke the principle that copyrightable material must "possess at least some minimal degree of creativity."  *Id*. at 207.  Specifically, Defendant contends that "the vast majority of [the page at issue] originated from Allianz Life."  Def's Br. at 8.  The Affidavit of Vincent Heck, on the other hand, downplays Defendant's contribution to the software, stating that "Allianz selected customization options, much like the purchaser of an automobile would choose paint color and other options, but the parties did not 'work together' on any developmental process for the working software.  Clarity merely agreed to allow Allianz to modify its financial disclosure and lay in some text blocks."  Heck aff. at ¶

18.  Given the affidavit testimony of Heck, the Court is unable to conclude that the allegedly infringed aspects of Plaintiff's software do not "possess at least some minimal degree of creativity."

Defendant also invokes the "fundamental premise of copyright law that an author can protect only the expression of an idea, but not the idea itself." *Kay Berry*, 421 F.3d at 208; Def's Br. at 8-9.  The *Kay Berry* court elaborated on this principle:

> In some instances, there may come a point when an author's expression becomes indistinguishable from the idea he seeks to convey, such that the two merge.  In these circumstances, no protection is available for the expression; otherwise, the copyright owner could effectively acquire a monopoly on the underlying art or the idea itself.  Merger is rare, however, and is generally found in works with a utilitarian function ...

*Kay Berry*, 421 F.3d at 209 (citations omitted).

Defendant's specific contention is that "Plaintiff's output simply reiterates facts, ideas, and concepts concerning the legal and tax characteristics of a Stretch IRA," that "[t]hese simple and plain statements such as 'benefits of tax deferral lost' or 'benefits of tax deferral continue' represent ideas and concepts that are not copyrightable," and that "Plaintiff cannot monopolize the right to describe the legal characteristics of a Stretch IRA."  Def's Br. at 9.  It appears that some aspects of the page at issue *may* not be copyrightable based on the merger doctrine.  The Court declines to make a final determination as to which elements, if any, are not copyrightable based upon the merger doctrine.  The Court does find, however, that "whether the copying, if proven, went so far as to constitute an improper appropriation," *i.e.*, "whether the substantial similarities relate to protectible material," should be submitted to a fact finder.  *Kay Berry*, 421 F.3d at 208 (citations omitted).

        d.     <u>Whether any Infringement is *De Minimis*</u>

Defendant also contends that the similarities between the Coss software and Plaintiff's software are de minimis and "too trivial to be actionable," and therefore the Court should grant summary judgment.  Def's Br. at 10-11.  A copyright violation is *de minimis* if it amounts to "a

technical violation of a right so trivial that the law will not impose legal consequences, or "copying has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying." *Ringgold v. Black Entertainment Television*, Inc., 126 F.3d 70, 74 (2d Cir. 1997). "A de minimis defense does not apply where the qualitative value of the copying is material." *Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002). To determine whether copying is material, a court must "look[] to the qualitative value of the copied material, both to the originator and to the plagiarist. *Id*. (citations and quotation marks omitted).

The Court has already found that the issue of substantial similarity should be decided by a fact finder, and likewise a fact finder could determine that the alleged copying was material to the software. Accordingly, the Court will not grant summary judgment on Plaintiff's claim of copyright infringement.


E.    Fraud (Count V)

Count V alleges that Defendant made material misrepresentations and omissions with the intent to deceive Plaintiff's customers and prospective customers, and that Plaintiff's customers relied on those misrepresentations by "treating [Defendant's] software and associated materials as if they were the original products of [Defendant]." Complaint at ¶¶ 70-80. Defendant contends that the Complaint fails to identify any alleged misrepresentation with particularity, contrary to Federal Rule of Civil Procedure 9(b), and that Plaintiff could not identify any customer or prospective customer who had been deceived. Def's Br. at 15. It also appears to the Court that Plaintiff has no standing to bring a claim on behalf of a customer who was allegedly injured by Defendant's conduct, *i.e.*, this claim should be brought by a third party customer who was injured by the alleged fraud. The Court finds that summary judgment should be granted for the reasons stated above. Additionally, other than the contention that this claim is not preempted by the Copyright Act, Plaintiff's brief in opposition says nothing about the viability of same, and

17

it appears that Plaintiff has abandoned this claim.  Therefore, the Court finds that summary

judgment should be granted due to Plaintiff's failure to demonstrate a genuine issue of material

fact.  *See* Fed.R.Civ.P. 56(e).


F.     Conversion (Count VI)

The Complaint alleges that Defendant has wrongfully converted Plaintiff's proprietary

and copyrighted software to its own use.  Complaint at ¶ 83.  "Conversion is a tort by which the

defendant deprives the plaintiff of his right to a chattel or interferes with the plaintiff's use or

possession of a chattel without the plaintiff's consent and without lawful justification."

*Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 581 (Pa. Super. 2003) (*citing Chrysler Credit

Corporation v. Smith*, 643 A.2d 1098, 1100 (1994), appeal denied, 652 A.2d 834 (1994)).  "A

plaintiff has a cause of action in conversion if he or she had actual or constructive possession of a

chattel at the time of the alleged conversion."  *Id.* (citation omitted).  Defendant contends that

Plaintiff's claim for conversion is 1) preempted by the Copyright Act  and 2) barred by the "gist

of the action" doctrine.  Def's Br. at 16.

The gist of the action doctrine[7] bars tort claims which arise solely from a contract

between the parties.  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n. 8 (3d Cir. 2002) (*citing

Phico Insurance Co. v. Presbyterian Medical Services Corp.*, 663 A.2d 753, 757 (Pa. Super.

1995)).  The doctrine is based on the notion that the "important difference between contract and

tort actions is that the latter lie from the breach of duties imposed as a matter of social policy

---

[7]. Although the Pennsylvania Supreme Court has never adopted the gist of the action
doctrine, the Pennsylvania Superior Court and the Court of Appeals for the Third Circuit, as well
as a number of United States District Courts, have predicted that it would.  *Williams v. Hilton
Group PLC*, 93 Fed. Appx. 384, 385 (3d Cir. 2004); e*toll, Inc. v. Elias/Savion Advertising, Inc.*,
811 A.2d 10, 14 (Pa. Super. 2002); *Air Products and Chemicals, Inc. v. Eaton Metal Products
Co.*,  256 F. Supp. 2d 329 (E. D. Pa. 2003); *Caudill Seed and Warehouse Co., Inc. v. Prophet 21,
Inc.*, 123 F. Supp. 2d 826, 833 n. 11 (E. D. Pa. 2000).  This Court also predicts that the
Pennsylvania Supreme Court would adopt that doctrine.  Additionally, neither party has disputed
that the substantive law of Pennsylvania governs this action.

while the former lie for the breach of duties imposed by mutual consensus." *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103-04 (3d Cir. 2001) (quoting *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. 1996)), *cert. denied*, *Ellwood City Forge Co. v. Bohler-Uddeholm America, Inc.*, 534 U.S. 1162 (2002).

While the majority of the reported cases deal with the interplay between claims for breach of contract and fraud, the Superior Court of Pennsylvania has held that a claim for conversion may also be barred by the gist of the action doctrine. *Pittsburgh Const. Co. v. Griffith*, 834 A.2d 572, 584 (Pa. Super. Ct. 2003) ("[W]e will not permit PCC to interject a claim for tortious conversion into an action that is decidedly contractual."). The Court finds that the gist of this action is a copyright and/or contract dispute, and therefore the gist of the action doctrine precludes Plaintiff's claim for conversion.[8]   It is also doubtful that the images that were allegedly copied from Plaintiff's software amount to a "chattel," or that Defendant's alleged acts of copying somehow deprived Plaintiff of the use of his own software.   For all of these reasons, and for the additional reason that Plaintiff's brief fails to demonstrate a genuine issue of material fact as to this claim, *see* Fed.R.Civ.P. 56(e), summary judgment will be granted.

G.      Restitution to Prevent Unjust Enrichment (Count VII)

Plaintiff's theory of its claim for unjust enrichment is as follows:

[U]pon Allianz' breach of the Licensing Agreement, the Agreement, and the contractual relationship between the parties, automatically terminated.  Any use after that time by Allianz and its thousands of agents was unlicensed and unlawful.  Therefore, any of Allianz' profits received after the breach in connection with the marketing of its insurance products through the use of either the Clarity or the Derivative Software, and their output, were unlawfully gained. It would be clearly inequitable for Allianz to retain the benefit of their ill-gotten

---

[8].  Whether Count VI is preempted by 17 U.S.C. § 301(a) is not perfectly clear.  On the one hand, this claim appears to be nothing more than a copyright infringement claim pled as a claim for conversion.  On the other hand, our court of appeals has held that "misappropriation type claims" are not necessarily preempted by the Copyright Act. *See Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 216-18 (3d Cir. 2002).  In any event, given the Court's resolution of the issue there is no need to make such a determination.

gains, profits derived from the use of a product that Allianz was not licensed to use.

Plaintiff's brief at 21-22.

"'Unjust enrichment' is essentially an equitable doctrine." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999), *appeal denied*, 751 A.2d 192 (Pa. 2000) (citation omitted). "Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred." *Id*. (citation omitted). The elements of unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Id*. "The application of the doctrine depends on the particular factual circumstances of the case at issue." *Id*. at 1203-04. "In determining if the doctrine applies, [the Court's] focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Id*. at 1204; *see also Torchia v. Torchia*, 499 A.2d 581, 582 (1985) ("[t]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'") (citation omitted). "The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the plaintiff." *Konidaris v. Portnoff Law Associates, Ltd.*, 884 A.2d 348, 355 (Pa. Cmwlth. 2005) (citation omitted).

Fatal to Plaintiff's claim is the principle that a court "may not make a finding of unjust enrichment ... where a written or express contract between parties exists." *Moore*, 729 A.2d at 1203 (citation omitted). The Court finds that summary judgment should be granted in light of the existence of a contract between the parties, to wit, the licensing agreement(s), which neither party has disputed. *Moore*, 729 A.2d at 1203 (citation omitted). The Court also finds that Plaintiff's claim for unjust enrichment is preempted by the Copyright Act. *Technology Based Solutions, Inc. v. Electronics College Inc.*, 168 F. Supp. 2d 375, 380 (E.D. Pa. 2001).

20

Accordingly, summary judgment will be granted as to this claim.

H.    Intentional Interference With Prospective Contractual Relations (Count IX)[9]

Plaintiff's theory of this claim is as follows:

> Through the blatant and egregious continuous use of the Clarity Software after the termination of the License Agreement, Allianz actively prevented over 5,000 of its independent field agents from entering into contracts with Clarity for their own licensing agreements for the Software.  Moreover, by sending out CDs containing the derivative software to these same agents, Allianz further unlawfully supplied the agents with software which, otherwise, Clarity could itself enter into contracts to license to the agents.

Plaintiff's brief at 22.

To prevail on this claim, Plaintiff must prove (1) the existence of a prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.  *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa. Super. 2003) (*citing Strickland v. University of Scranton*, 700 A.2d 979, 985 (Pa. Super. 1997)).

In analyzing Plaintiff's claim the Court finds that the evidence of a prospective contractual relation is speculative at best.  The Superior Court of Pennsylvania provides the following guidance on the existence of a prospective contractual relation:

> Defining a 'prospective  contractual  relation' is admittedly problematic.  To a certain extent, the term has an evasive quality, excluding [*sic*] precise definition. It is something less than a contractual  right, something more than a mere hope. ... [A]nything that is prospective in nature is necessarily uncertain.  We are not dealing with certainties, but with reasonable likelihood or probability.  This must be something more than a mere hope or the innate optimism of the salesman.  As the Superior Court of New Jersey has put it, '... the rule to be applied ... is that the broker may recover when the jury is satisfied that but for the wrongful acts of the defendant it is reasonably probable that the plaintiff would have effected the sale of the property and received a commission.' ... This is an objective standard which of course must be supplied by adequate proof.

---

[9]. Count VIII states a claim for Intentional Interference with *Existing* Contractual Relations against former defendant Dunhill Marketing and Insurance Services, Inc., but not against Defendant.

*InfoSAGE, Inc. v. Mellon Ventures, L.P.*, 896 A.2d 616, 627-28 (Pa. Super. 2006) (citation omitted).

Heck testified at his deposition that prior to filing the Complaint he was not marketing his software to independent Allianz agents and had no plan to do so. Heck depo at 168-69. Indeed, the sum of Heck's deposition testimony is that there was a theoretical possibility, rather than a "reasonable likelihood or probability," that Plaintiff would have contracted with independent Allianz agents for the software. *See id.* at 166-69.[10]

Furthermore, the Court finds no evidence of purposeful action by Defendant to prevent third parties, namely its independent field agents, from contracting with Plaintiff for the sale of software. Heck testified that during the course of the contract independent Allianz agents were free to contract, and some did contract, with Plaintiff for a "generic" version of the software which did not have "Allianz all over the reports." *Id.* at 168. There is also no evidence which indicates that Allianz in any way hindered or dissuaded its independent agents from licensing the software after the alleged breach of contract. Therefore, the Court will grant summary judgment to Defendant on this claim.

---

[10]. When asked to identify the prospective contractual relations, Heck's deposition testimony was as follows:

A:     I guess there's two parts to this.  You know, when you breached the contract and started reproducing my software, all of these people should have come directly to me for the output.  Secondly, when you started distributing a derivative of my software, you were providing it.

Q:     So who are the individuals that you had perspective (*sic*) contracts with who didn't buy your software?

A:     Well, give me a list of all the people you generated PDFs for and I'll tell you who they (*sic*).

Q:     So your contention is that but for the conduct that you complained about in this Complaint you would have sold this software to all of the Allianz agents?

A:     Not all of them, but some.

Q:     How many?

A:     Tell me how many people you gave PDFs to.

Heck depo. at 166-67.

22

I.      Plaintiff's Breach of Contract Claim Against Defendant for Dunhill's Actions

Plaintiff's claim for breach of contract alleges that Defendant "has breached the License Agreement by ... permitting Dunhill Marketing to place on its website a version of the R&EP Software that could be downloaded and utilized by unknown, unlicensed third parties in an unrestricted fashion ..."  Complaint at ¶ 12.  Defendant contends that this claim fails because it "did nothing to cause Dunhill to place the software on its website," and because "Plaintiff has no knowledge of any damages allegedly suffered as a result of this incident."  Defendant's brief at 19.  In response, Plaintiff contends that Dunhill is one of Defendant's agents, and therefore "[u]nder principles of agency law, ... it doesn't matter what Defendant knew or what it had authorized ..."  Plaintiff's response at 26-27.

As stated above, "Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quotations and citation omitted).  The Court finds that summary judgment should be granted due to Plaintiff's failure to adduce any evidence of damages due to this incident.  *See* Heck depo. at 79-80, 85.  The Court also finds that the "agency" relationship between Defendant and Dunhill is not the sort of relationship upon which *respondeat superior* liability can be based.  Plaintiff is correct that "a principal is liable to third parties for the frauds, deceits, concealments, misrepresentations, torts, negligent acts and other malfeasances of his agent, even though the principal did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them, as long as they occurred within the agent's scope of employment."  Plaintiff's brief at 26 (*quoting Travelers Cas. & Sur. Co. v. Castegnaro*, 772 A.2d 456, 460 (Pa. 2001)).  However, there is no evidence that Dunhill acted within the scope of any sort of employment relationship with Defendant.  Therefore, the Court will grant summary judgment on Plaintiff's claim against Defendant for Dunhill's actions.

2:04-cv-01441-TFM   Document 95   Filed 08/11/06   Page 24 of 25

<u>Conclusion</u>

For the reasons hereinabove set forth, Defendant's Motion for Summary Judgment will be granted in part and denied in part.  Specifically, Plaintiff's claims for breach of contract and copyright infringement survive summary judgment; the others do not.  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLARITY SOFTWARE, LLC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **2:04-cv-1441** |
| | ) | |
| ALLIANZ LIFE INSURANCE COMPANY | ) | |
| OF NORTH AMERICA, | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER OF COURT**

AND NOW, this 11th day of August, 2006, it is hereby ORDERED, ADJUDGED and

DECREED that the Motion for Summary Judgment (*Document No. 63*) filed by Defendant

Allianz Life Insurance Company of North America is **DENIED** as to Count I (Breach of

Contract) and Count IV (Copyright Infringement) of Plaintiff's Complaint and Summary

Judgment is **GRANTED** on all other Counts of the Complaint.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:     Bruce C. Fox, Esquire
        Email: bruce.fox@obermayer.com

        Yarone S. Zober, Esquire
        Email: yarone.zober@obermayer.com

        Marilyn J. Larrimer, Esquire
        Email: mlarrimer@hwwlaw.com

        Keith S. Moheban, Esquire
        Email: keith.moheban@leonard.com

        Erin Skold, Esquire
        Email: erin.skold@leonard.com